# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SURAN WIJE | § | |
| | § | |
| v. | § | CASE NO. 4:14-CV-571 |
| | § | (Judge Mazzant/Judge Nowak) |
| TEXAS WOMAN'S UNIVERSITY, ET AL. | § | |

## MEMORANDUM ADOPTING REPORT AND
## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On February 5, 2016, the report of the Magistrate Judge (Dkt. #100) was entered containing proposed findings of fact and recommendations that Defendants Texas Woman's University ("TWU"), Ann Stuart, Robert Neely, Ann Staton, Jennifer Martin, Daniel Miller, Barbara Presnall, AnaLouise Keating, Linda Rubin, Stephen Souris, Claire Sahlin, Christian Hart, and Danielle Phillips' (collectively, the "Individual Defendants," and with TWU, the "TWU Defendants") Second Amended Motion to Dismiss (Dkt. #78) be granted. Having received the report of the Magistrate Judge (Dkt. #100), having considered Plaintiff's timely filed objections (Dkt. #101), the TWU Defendants' response to Plaintiff's objections (Dkt. #103), and Plaintiff's reply to the TWU Defendants' response (Dkt. #104), the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct.

## BACKGROUND

The facts in this case originate from Plaintiff's dissatisfaction with a grade appeal process he participated in as a student at Defendant TWU in the spring of 2011 (*see generally* Dkt. 86). The underlying facts are set out in further detail by the Magistrate Judge, and need not be

repeated in their entirety (*see* Dkt. #100). Accordingly, the Court sets forth herein only those facts pertinent to Plaintiff's objections.

Plaintiff allegedly lost points for lack of comprehension during a final exam, resulting in his receiving a B on his examination (Dkt. #86 at 3). Plaintiff subsequently raised the matter with the course's professor, Dr. Linda Rubin, Ph.D. ("Dr. Rubin"). *Id*. at 2; Ex. 3. Plaintiff contends that the points he lost on the examination was a result of Dr. Rubin's discrimination against him because of his gender and race/national origin. *Id*. at 2. Plaintiff also contends that Dr. Rubin deducted grade points from his final grade for his absence from class to attend a Fulbright award ceremony. *Id*. at 2-3. Plaintiff subsequently appealed Dr. Rubin's decision through TWU's "six-step" grade appeal process. *Id*. at 3. Plaintiff does not allege facts regarding each stage of the appeal, but contends generally that the Individual Defendants were appeal participants. *Id*. Plaintiff alleges that throughout the appeal process, various professors, including Drs. Rubin and Claire Sahlin, made disparaging and untrue remarks about his poor academic performance and "invisible disability health information," which gives rise to his cause of action for defamation. *Id*. at 3. Plaintiff also states that at the final stage of the appeal, Drs. Ann Stuart and Robert Neely ignored Plaintiff's appeal. *Id*. at 4. Plaintiff contends TWU discriminated and retaliated against him by ultimately denying his appeal. *Id*. at 2.

Moreover, Plaintiff argues that, while he was enrolled in TWU's Women's Studies Certificate Program, he had allegedly completed the requirements for both the certificate program and TWU's Women's Studies graduate program, but nevertheless was denied admission to the graduate program following his grade appeal despite his excellent grades and completion of all requirements. *Id*. at 3-4. Plaintiff also contends that he was required to apply for the same graduate program three different times, and TWU billed him for the application fee each time.

*Id.* at 4. Plaintiff does not dispute that he received a certificate from TWU upon completion of the certificate program, but does assert that, but for the TWU Defendants' discrimination and retaliation, Plaintiff would have obtained his Master's Degree in Women's Studies. *Id.* at 6. On or about October 23, 2013, Plaintiff filed an administrative complaint against TWU with the Department of Education's Office for Civil Rights, which was denied on February 21, 2014, for insufficient evidence from which the Department of Education could infer discrimination. *Id.* at 3.

On September 4, 2014, Plaintiff filed this civil action against the TWU Defendants (Dkt. #1). Plaintiff's live pleading in this case is his Fifth Amended Complaint, filed on September 18, 2015 (Dkt. #86). The Court has construed Plaintiff's Fifth Amended Complaint (and other pleadings) to assert claims against the TWU Defendants for:[1] (1) defamation (Dkt. #86 at 15-16); (2) fraud (Dkt. #86 at 2-3, 8, 11-14, 22); (3) intentional infliction of emotional distress (Dkt. #86 at 22); (4) negligent infliction of emotional distress (Dkt. #86 at 22); (5) public disclosure of private facts (Dkt. #86 at 4); (6) negligence (Dkt. #86 at 5, 16-17); (7) Texas Deceptive Trade Practices Act ("DTPA") (Dkt. #86 at 4); (8) Fourteenth Amendment procedural due process (Dkt. #86 at 4, 8, 15, 24); (9) Fourteenth Amendment substantive due process (Dkt. #86 at 4, 8, 15, 21); (10) Fourteenth Amendment equal protection (Dkt. #86 at 8, 15, 21); (11) Racketeer Influenced and Corrupt Organizations Act ("RICO") (Dkt. #86 at 4, 6); (12) Commerce Clause (Dkt. #86 at 7, 8); (13) Title II of the Americans with Disabilities Act ("ADA") (Dkt. #86 at 7, 9-10); (14) 18 U.S.C. § 1346 (Dkt. #86 at 18); (15) 28 U.S.C. § 1331 (Dkt. #86 at 18); (16) False Claims Act ("FCA") (Dkt. #86 at 7); (17) Federal Tort Claims Act

---

[1] The Court notes that the list of claims in the Magistrate Judge's report and recommendation omitted numbers "7" and "8" (*see* Dkt. #100 at 4). However, after reviewing the report and recommendation, and all other relevant pleadings, the Court concludes that this is a typographical error. The Magistrate Judge's list was misnumbered but no claims were omitted from consideration.

("FTCA") (Dkt. #86 at 7); (18) Section 504 of the Rehabilitation Act ("Section 504") (Dkt. #86 at 7, 9-10); (19) Title VII of the Civil Rights Act of 1964 ("Title VII") (Dkt. #86 at 7, 9-10); (20) Title IX of the Education Amendments of 1972 ("Title IX") (Dkt. #86 at 7, 9-11); (21) "white collar crimes" (Dkt. #86 at 6, 22); (22) conspiracy to defraud (Dkt. #86 at 4, 5); (23) entrapment (Dkt. #86 at 3, 22); (24) legacy preference corruption (Dkt. #71 at 5); and (25) retaliation (Dkt. #86 at 6).[2]

On August 10, 2015, the TWU Defendants filed a Second Amended Motion to Dismiss (Dkt. #78). On August 27, 2015, Plaintiff filed a response to the TWU Defendants' Motion to Dismiss (Dkt. #82); and on September 9, 2015, the TWU Defendants filed a Reply (Dkt. #84). On September 18, 2015, Plaintiff filed his Fifth Amended Complaint, which is the live pleading in this action (Dkts. #86). On December 22, 2015, the Court entered an Order requiring the TWU Defendants to file a brief regarding the Eleventh Amendment immunity defense claimed by the TWU Defendants, as well as the applicability, if any, to each of Plaintiff's causes of action asserted in his live Fifth Amended Complaint (Dkt. #93). The TWU Defendants filed their Supplemental Brief on Eleventh Amendment Immunity Grounds in Support of Motions to Dismiss on January 8, 2016, in accordance with the Court's Order (Dkt. #96). The Magistrate Judge entered a report and recommendation on February 5, 2016, recommending dismissal of each of Plaintiff's claims against the TWU Defendants (Dkt. #100). On February 18, 2016, Plaintiff timely filed objections (Dkt. #101). Also on February 18, 2016, Plaintiff filed a further Motion to Appoint Counsel (Dkt. #102). On March 3, 2016, the TWU Defendants filed a Response to Plaintiff's Objections (Dkt. #103), and on March 7, 2016, Plaintiff filed a Reply to the TWU Defendants' Response (Dkt. #104).

---

[2] Plaintiff objects to the inclusion of the DTPA claim in this list, advising the Court by way of his objections that he had intended this claim to be removed and/or dropped previously (*see* Dkt. #101 at 2; *infra* page seven).

# PLAINTIFF'S OBJECTIONS

Plaintiff has objected to the Magistrate Judge's report and recommendation on seven grounds.[3] Specifically, Plaintiff objects to (1) the Magistrate Judge's use of an "inaccessibly heightened" pleading standard; (2) the Magistrate Judge's reference to the DTPA (a cause of action Plaintiff alleges he previously agreed to remove from his case); (3) the Magistrate Judge's reference to and/or reliance on the TWU Defendants' Supplemental Brief related to Eleventh Amendment immunity (Dkt. #96); (4) certain alleged factual errors in the Magistrate Judge's report and recommendation; (5) the Magistrate Judge's use of "subjective" rather than "objective" language; (6) the Magistrate Judge's focus on "cosmetic" symptoms rather than "structural" causes; and (7) six specific sentences in the Magistrate Judge's report and recommendation (*see* Dkt. #101). Plaintiff's objections, as stated however, have no effect and/or impact on the majority of the findings and conclusions of the Magistrate Judge (*see* Dkt. #100).

To reiterate, the Magistrate Judge specifically recommended that:

(1) Each of Plaintiff's claims against the TWU Defendants[4] in their official capacities (for defamation, fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, public disclosure of private facts, negligence, DTPA, Fourteenth Amendment violations, RICO, the Commerce Clause, the ADA, 28 U.S.C. § 1331, 18 U.S.C. § 1346, FCA, and FTCA) be dismissed because they are precluded by Eleventh Amendment immunity (Dkt. #100 at 22).

---

[3] The first and ninth paragraphs in Plaintiff's Objections are entitled/listed as objections; however, therein Plaintiff merely comments (as opposed to objects) on the Magistrate Judge's report and recommendation (*see* Dkt. #101 at 1, 5). Accordingly, the Court does not address such comments herein.

[4] Again, the TWU Defendants encompass Texas Woman's University collectively with each of the Individual Defendants, Ann Stuart, Robert Neely, Ann Staton, Jennifer Martin, Daniel Miller, Barbara Presnall, AnaLouise Keating, Linda Rubin, Stephen Souris, Claire Sahlin, Christian Hart, and Danielle Phillips. The Individual Defendants include Ann Stuart, Robert Neely, Ann Staton, Jennifer Martin, Daniel Miller, Barbara Presnall, AnaLouise Keating, Linda Rubin, Stephen Souris, Claire Sahlin, Christian Hart, and Danielle Phillips.

(2) Each of Plaintiff's claims against the Individual Defendants in their individual capacities (for defamation, fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, public disclosure of private facts, negligence, the DTPA, Fourteenth Amendment violations, RICO, the Commerce Clause, the ADA, 28 U.S.C. § 1331, 18 U.S.C. § 1346, FCA, FTCA, Section 504, Title VII, Title IX, white collar crimes, conspiracy to defraud, entrapment, legacy preference corruption, and retaliation) be dismissed because they are precluded by qualified immunity (Dkt. #100 at 29).

(3) Plaintiff's claims against the Individual Defendants in their individual capacities for violations of the Commerce Clause, 28 U.S.C. § 1331, 18 U.S.C. § 1346, Title II, Title VII, Section 504, Title IX, defamation, fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, public disclosure of private facts, negligence, civil conspiracy, entrapment, RICO, FCA, and DTPA be dismissed because such claims either do not exist and/or are inapplicable to this litigation (Dkt. #100 at 36).

(4) Plaintiff's claims against the TWU Defendants in their official capacities for violation of Section 504, Title VII, and Title IX be dismissed for failure to state a claim (Dkt. #100 at 37-38).

(5) All of Plaintiff's claims against the Individual Defendants in their individual capacities be dismissed for failure to state a claim (Dkt. #100 at 39-43).

(6) All of Plaintiff's claims against the TWU Defendants in their official and individual capacities be dismissed for lack of standing (Dkt. #100 at 11).

Plaintiff has failed to specifically state and/or raise any objections which impact the findings by the Magistrate Judge regarding (i) the TWU Defendants' entitlement to Eleventh Amendment immunity (except for Plaintiff's Fourteenth Amendment claim discussed further *infra*), (ii) the Individual Defendants' entitlement to qualified immunity, and (iii) Plaintiff's claims against the Individual Defendants that either do not exist and/or are inapplicable to this litigation (*see* Dkt. #100).

As such, the Court finds that these findings and conclusions of the Magistrate Judge are correct and will be adopted as the findings and conclusions of the Court. Accordingly, Plaintiff's claims: (i) against the TWU Defendants in their official capacities for defamation, fraud,

intentional infliction of emotional distress, negligent infliction of emotional distress, public disclosure of private facts, negligence, DTPA, RICO, the Commerce Clause, the ADA, 28 U.S.C. § 1331, 18 U.S.C. § 1346, FCA, and FTCA; (ii) against the Individual Defendants in their individual capacities for defamation, fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, public disclosure of private facts, negligence, the DTPA, Fourteenth Amendment violations, RICO, the Commerce Clause, the ADA, 28 U.S.C. § 1331, 18 U.S.C. § 1346, FCA, FTCA, Section 504, Title VII, Title IX, white collar crimes, conspiracy to defraud, entrapment, legacy preference corruption, and retaliation; and (iii) against the Individual Defendants in their individual capacities for violations of the Commerce Clause, 28 U.S.C. § 1331, 18 U.S.C. § 1346, Title II, Title VII, Section 504, Title IX, defamation, fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, public disclosure of private facts, negligence, civil conspiracy, entrapment, RICO, FCA, and DTPA that either do not exist and/or are inapplicable to this litigation are dismissed.

The Court now addresses each of Plaintiff's objections in turn and their impact, if any, on Plaintiff's remaining claim.[5]

## I.        *Inaccessibly Heightened Pleading Standards*

Plaintiff's first objection contends that "somewhere along the way the pleading standards increased to the point where the entire case may be thrown out now for 'failure to state a claim [before the benefit of discovery].'" *Id*. at 1. Plaintiff further contends that it is "impossible" to state a "covert discrimination claim without even a basic investigation" and that "one remedy may be to appoint an attorney who can reach these heightened pleading standards."[6] *Id*. The TWU Defendants respond that the Magistrate Judge applied the correct federal pleading standard

---

[5] The only claim remaining is Plaintiff's claim against the TWU Defendants (in their official capacities) for alleged violations of the Fourteenth Amendment.
[6] The Court addresses Plaintiff's separately filed Motion to Appoint Counsel (Dkt. # 102) *infra*.

when determining Plaintiff failed to satisfy the pleading requirements (Dkt. #103 at 3). The TWU Defendants further assert that Plaintiff's first objection does not demonstrate why this was the incorrect pleading standard. *Id.*

The Magistrate Judge clearly stated the pleading requirements under the Federal Rules of Civil Procedure, and applied that analysis correctly according to binding United States Supreme Court precedent (*see* Dkt. #100 at 6-8, 30-43). The Magistrate Judge found, among other things, Plaintiff failed to:

(1) Allege facts sufficient to demonstrate the Individual Defendants violated his constitutional rights (Dkt. #100 at 29);

(2) State a claim against the Individual Defendants in their individual capacities for violation of the Commerce Clause, 28 U.S.C. § 1331, 18 U.S.C. § 1346, Title II, Title VII, Section 504, and Title IX, because no such cause of action exists and/or does not provide a basis for liability against the Individual Defendants (Dkt. #100 at 32);

(3) State a claim against the TWU Defendants in their official capacities for violation of Section 504, Title VII, and Title IX (Dkt. #100 at 36); and

(4) Allege facts sufficient to demonstrate a plausible claim against the Individual Defendants in their individual capacities (Dkt. #100 at 40).

Plaintiff's allegations do not allow the Court to conclude that Plaintiff has sufficiently stated a claim against the TWU Defendants in their official capacities and/or the Individual Defendants in their individual capacities. *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). Moreover, Plaintiff's contention that his entire case is being thrown out for failure to state a claim before the benefit of discovery is incorrect (Dkt. #101 at 1). Indeed, the Magistrate Judge's report and recommendation considering each of Plaintiff's claims totaled forty-five pages in length (*see generally* Dkt. #100). Plaintiff's failure to state a claim was merely one of the reasons Plaintiff's claims were barred – in addition to Plaintiff's lack of standing, Eleventh

Amendment immunity, and qualified immunity. *Id.* Accordingly, the Court finds that Plaintiff's first objection is overruled.

## II.     *The Magistrate Judge's Analysis of Plaintiff's DTPA Claim*

Plaintiff also objects to the Magistrate Judge's analysis of Plaintiff's DTPA claim against the TWU Defendants (Dkt. #101 at 2). Specifically, Plaintiff contends that he previously removed the DTPA cause of action and is confused because it now reappears in the TWU Defendants' Supplemental Brief and the Magistrate Judge's report and recommendation. *Id.* The Magistrate Judge addressed Plaintiff's DTPA claims because Plaintiff referenced the DTPA in his Fifth Amended Complaint (Dkt. #86 at 4). Thus, even if Plaintiff intended to remove this cause of action, he nonetheless included language in his Fifth Amended Complaint suggesting DTPA violations by the TWU Defendants, prompting the Magistrate Judge to address the potential claim. Accordingly, Plaintiff's second objection is overruled.

## III.    *The Magistrate Judge's Reference to and/or Reliance on the TWU Defendants' Supplemental Brief*

Plaintiff also objects to the Magistrate Judge's reference to and/or reliance on the TWU Defendants' Supplemental Brief (Dkt. #101 at 2). Specifically, Plaintiff suggests that he was prejudiced by the TWU Defendants' failure to brief why Plaintiff's remaining claims, not dismissed on Eleventh Amendment immunity grounds, "'must still be dismissed for failure to state a claim.'" *Id.* (quoting Dkt. #96 at 15). Plaintiff further contends that he "had to quickly learn the IRAC Method" and "a discussion by [the TWU] Defendants would have been helpful to better understand any shortcomings in Plaintiff's legal analysis of these claims using the IRAC Method." *Id.* The TWU Defendants' Motions to Dismiss contain briefing as to each of Plaintiff's claims (*see* Dkts. #73; #78); moreover, the TWU Defendants' Supplemental Brief was filed in direct response to the Court's Order directing them to further brief the Eleventh

Amendment immunity issue (Dkts. #103 at 4; #93).  As such, Plaintiff's suggestion that he was somehow prejudiced because the TWU Defendants' Supplemental Brief did not address the failure to state a claim issue is unpersuasive.  Particularly because, as noted earlier, the TWU Defendants fully briefed each basis for dismissing Plaintiff's claims in the underlying Motions to Dismiss, including his failure to state a claim (*see* Dkts. #73; #78), and Plaintiff had full and fair opportunity to respond to both the Motions to Dismiss and the TWU Defendants' Supplemental Brief.

Plaintiff was also not prejudiced because he "had to quickly learn the IRAC Method." The "IRAC Method" of legal writing is merely a "mnemonic reminder of how to simply organize legal argument consistent with propositional logic."  Brian K. Keller, *Whittling: Drafting Concise and Effective Appellate Briefs*, 14 J. App. Prac. & Process 285, 295 (2013). While most attorneys are familiar with the IRAC Method of legal writing, the Court does not expect *pro se* plaintiffs to write in this manner in their pleadings with the Court.  In fact, the United States Supreme Court explains that "[a] document filed *pro se* is to be liberally construed ... and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).  The Magistrate Judge liberally construed Plaintiff's Fifth Amended Complaint, and all of his other relevant filings, in accordance with United States Supreme Court precedent (*see generally* Dkt. #100), and Plaintiff's unfamiliarity with the IRAC Method of legal writing does not affect the underling merits (or lack thereof) of his claims.  Accordingly, Plaintiff's third objection is overruled.

*IV.*     *Alleged Factual Errors in the Magistrate Judge's Report and Recommendation*

Plaintiff asserts three specific objections to the factual findings made by the Magistrate Judge: (1) recounting of his grade appeal process; (2) characterization of his requested relief; and (3) statement of Dr. Rubin's attendance policy (Dkt. #101 at 2-3).  The TWU Defendants assert that even if the Magistrate Judge misstated these facts, the facts are arbitrary and trivial, and have no impact on the ultimate outcome, and further, this Court would still not have subject matter jurisdiction over Plaintiff's claims or change his failure to meet the pleading requirements (Dkt. #103 at 5).  The Court addresses each alleged factual error in turn below.

*A.*     *The Magistrate Judge's Recounting of Plaintiff's Grade Appeal Process*

First, Plaintiff objects to the Magistrate Judge's factual account of the initiation of the grade appeal process and his initial participation in it (Dkt. #101 at 2).  The Magistrate Judge describes Plaintiff's participation in the initiation of the grade appeal process as "beginning with a meeting with Dr. Rubin" (*see* Dkt. 100 at 3, 10).  The Magistrate Judge further describes Plaintiff's participation in the grade appeal process as "voluntary."  *Id.* at 10.  Plaintiff specifically objects to these two statements because: (1) "Plaintiff never met with Dr. Rubin for the first-level appeal" and (2) "participation was involuntary as Dr. Rubin never provided a grade appeal consent form" (Dkt. #101 at 2).  Plaintiff's objections to the wording used by the Magistrate Judge have no bearing on the Magistrate Judge's recommended dismissal of his claims against the TWU Defendants for both lack of subject matter jurisdiction and failure to state a claim.  The Magistrate Judge's factual account of Plaintiff's participation in the grade appeal process does not affect in any way the application of the legal doctrines upon which dismissal is based.  This objection is overruled.

### B.    The Magistrate Judge's Characterization of Plaintiff's Requested Relief

Second, Plaintiff objects to the Magistrate Judge's characterization of the relief Plaintiff requests in his Fifth Amended Complaint (Dkt. #101 at 3).  Specifically, Plaintiff takes issue with the Magistrate Judge's statement that "Plaintiff has requested neither monetary damages nor equitable relief."  *Id*. (quoting Dkt. #100 at 10).  Plaintiff asserts that his Fifth Amended Complaint does, in fact, request actual or compensatory damages.  *Id*. (quoting Dkt. #100 at 10). In his Fifth Amended Complaint, Plaintiff states, "[a]ccording to auditable and verifiable data by U.S. News & World Reports, the after-taxes, lifetime earning of a Master's degree are $2.67 to $3.65 million.  These are a type of detriment called actual or compensatory damages, which are designed to replace what was lost."  (Dkt. #86 at 17, 21).  Plaintiff advises the Court he intended this to be an assertion that he was entitled to money damages (Dkt. #101 at 3).  Notwithstanding such assertion, also in his objections, Plaintiff seemingly disavows any request for money damages, stating that he "does not want to appear greedy or cause financial hardship to his Alma Matter, so he desires meaningful corrective action and a diplomatic resolution that acknowledges the six-years [sic] of suffering [the TWU] Defendants' frailties in character have caused to both Plaintiff and his family."  *Id.*

As an initial matter, Plaintiff's citation to the U.S. News & World Reports, in his seventy-nine page Fifth Amended Complaint, does not sufficiently state a request for monetary relief (Dkt. #86 at 17, 21).  Nevertheless, even assuming *arguendo* that it did, Plaintiff's claims against the TWU Defendants in their official capacities for alleged violations of his Fourteenth Amendment rights would remain barred by Eleventh Amendment Immunity.  The Supreme Court has expressly held that claims for constitutional violations do not abrogate a state entity's entitlement to Eleventh Amendment immunity except if such claims seek to enjoin violations of

federal law (known as the "*Ex parte Young* exception"). *Ex parte Young*, 209 U.S. 123 (1908). To determine whether the *Ex parte Young* exception effectively avoids an Eleventh Amendment bar to suit, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645-46 (2002). Here, if Plaintiff's citation to the U.S. News & World Reports is construed as a request for monetary relief, his Fourteenth Amendment claims are foreclosed by Eleventh Amendment immunity because the *Ex Parte Young* exception does not apply. *See Smith v. Sheeley*, No. W-09-CA-002, 2009 WL 8712650, at *3 (W.D. Tex. Aug. 20, 2009) ("The *Ex parte Young* exception has been narrowly interpreted to allow that, when a plaintiff sues a state official alleging a violation of federal law, a federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief.") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)). Accordingly, if Plaintiff intended, by way of his Fifth Amended Complaint, to seek monetary relief, his Fourteenth Amendment claims would be barred.

However, Plaintiff's objection seemingly indicates that his true objective is to obtain injunctive relief (*see* Dkt. #103 at 3). The Court thus considered Plaintiff's ability to pursue Fourteenth Amendment claims in light of the injunction relief articulated. Plaintiff advances that the relief he desires from this lawsuit is "meaningful corrective action and a diplomatic resolution that acknowledges" his years of suffering at the hands of the TWU Defendants. *Id.* The Court construes Plaintiff's request for "meaningful corrective action and a diplomatic resolution" as a request to be admitted into the Women's Studies graduate program at TWU and/or as a request to be given his Master's degree in Women's Studies. However, the Court is

unable to order any such relief. First, Plaintiff seeks corrective, not prospective, action; and, in any event, the Fifth Circuit has held "[u]niversity officials should have broad discretionary power to determine the fitness of a student to continue his studies." *Keys v. Sawyer*, 353 F. Supp. 936, 940 (S.D. Tex. 1973). In fact, "[t]here is a compelling need and very strong policy consideration in favor of giving local school officials the widest possible latitude in the management of school affairs." *Id.* (citing *Karr v. Schmidt*, 460 F.2d 609 (5th Cir. 1972)). Moreover, federal courts should not override grading and similar decisions about academic merit unless these decisions so substantially depart from accepted academic norms as to demonstrate a failure to exercise professional judgment. *Id.* Accordingly, because Plaintiff's request for "meaningful corrective action and a diplomatic resolution" is not relief that can be given by the Court, Plaintiff's Fourteenth Amendment claims must be dismissed for lack of standing and this objection is overruled.

### C. The Magistrate Judge's Statement of Dr. Rubin's Attendance Policy

Third, Plaintiff objects to the Magistrate Judge's factual account of Dr. Rubin's attendance policy (Dkt. #101 at 3). The Magistrate Judge described Plaintiff's rendition of Dr. Rubin's attendance policy as follows: "Plaintiff contends that Dr. Rubin deducted grade points form his final grade for his absence from class to attend a Fulbright award ceremony, but did not deduct points from other student attendees" (Dkt. #100 at 2). Plaintiff specifically objects to this statement because he "does not yet know how Dr. Rubin treated other students in terms of excused absences or if Dr. Rubin had other Fulbright finalist students in her class" (Dkt. #101 at 3). Plaintiff's objection to the wording used by the Magistrate Judge once again is irrelevant to the Magistrate Judge's recommended dismissal of his claims against the TWU Defendants for both lack of subject matter jurisdiction and failure to state a claim. The

Magistrate Judge's factual account of Dr. Rubin's attendance policy and/or whether other students were treated differently than Plaintiff does not affect the application of the legal doctrines upon which dismissal is based. Moreover, the fact that Plaintiff does not know if other similarly situated students were treated differently by Dr. Rubin bolsters the Magistrate Judge's finding that Plaintiff failed to sufficiently plead that his Fourteenth Amendment equal protection rights have been violated (*see* Dkt. #100 at 28) ("Plaintiff has also not identified (or asserted for that matter) that he was treated differently than any other similarly situated student."). This objection is overruled.

## V. *The Magistrate Judge's Use of Subjective Language and Focus on Cosmetic Symptoms*

Plaintiff's fifth and sixth objections similarly take issue with the Magistrate Judge's use of particular phrases (Dkt. #101 at 3-4). Specifically, Plaintiff "has reservations about" the Magistrate Judge's use of "prerequisites" because use of such a term is a subjective standard students at TWU are held accountable for. *Id*. at 3. Plaintiff "prefers the word 'hours' to 'prerequisites'" because it is a more objective standard with which to rate a graduate student's progression through their coursework. *See id*. Plaintiff further contends that the Magistrate Judge's report and recommendation improperly focuses on his receiving a "B" grade in a class (which Plaintiff refers to as a "cosmetic symptom"), as opposed to the main issue in the case, which is "exam tampering, ignoring written internal grade appeal policies, admissions discrimination, and Plaintiff owing six-figures of toxic, non-dischargeable, student loan debt for which he has no degree to show" (which Plaintiff refers to as the "root cause"). *Id*. at 4. The TWU Defendants assert that even if the Magistrate Judge used Plaintiff's preferred language, this correction "still would not establish this Court's jurisdiction over [Plaintiff's] claims or do any

more to satisfy the requirements to state a claim for which relief can be granted" (Dkt. #103 at 5).

Once again, Plaintiff's objections are irrelevant to the Magistrate Judge's recommended dismissal of his claims against the TWU Defendants for both lack of subject matter jurisdiction and failure to state a claim. The Magistrate Judge's use of "prerequisites" as compared to "hours" and the alleged focus on the cosmetic symptom, as opposed to the root cause, does not affect the application of the legal doctrines upon which dismissal is based. Accordingly, Plaintiff's fifth and sixth objections are overruled.

## VI.    *Plaintiff's Remaining General Objections*

Plaintiff's seventh objection lists six sentences from the Magistrate Judge's report and recommendation that he "has concerns or objections to" (Dkt. #101 at 4).[7] In support of this objection, Plaintiff provides the Court with his sworn affidavit which describes his education and

---

[7] Specifically, the six sentences are as follows:

    (1) Because of the extensive process Plaintiff was afforded (particularly given the fact that current procedural due process precedent only imposes a notice requirement) he has not alleged a violation of his procedural due process rights against the Individual Defendants, and such claim is barred by qualified immunity (Dkt. #100 at 27).

    (2) Following Supreme Court precedent, the Court will again assume *arguendo* that such a right exists, and consider whether the allegations are insufficient to show that the conduct challenged by Plaintiff "is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Id.*; *Ewing*, 474 U.S. at 225 (Dkt. #100 at 27).

    (3) Dr. Rubin awarded Plaintiff a B on his examination as a result of his failure to cover certain topics that Dr. Rubin ultimately deemed necessary for inclusion in a comprehensive exam answer (Dkt. #100 at 27).

    (4) The Individual Defendants need only show that they exercised professional judgment – a hurdle that is easily met here given the exhaustive appeal process. *See Wheeler v. Miller*, 168 F.3d 241, 250 (5th Cir. 1999) (finding that decision to deny student with poor grades a doctorate "[did] not come close to showing that [University] did not exercise professional judgment.") (Dkt. #100 at 27-28).

    (5) Going further, Plaintiff has also not identified (or asserted for that matter) that he was treated differently than any other similarly situated student (*i.e.* a student who was taking Dr. Rubin's course and made the same essay responses as Plaintiff, but because they were female did not have points deducted for lack of comprehensiveness) (Dkt. #100 at 28-29).

    (6) In addition, Plaintiff's allegation, if any, that he was denied admission to the TWU Women's Studies graduate program because he is male, is merely conclusory. *Id.* Plaintiff does not allege any facts, other than his own subjective beliefs, in support of this allegation, and such conclusory statement is not sufficient to state a claim under Title IX (Dkt. #100 at 39).

teaching experience, and how his treatment while at TWU was something he has "never encountered" (Dkt. 101-1 at 1-2).  The TWU Defendants contend that such a general objection, "[w]ithout any reasons, arguments, laws, or other documents establishing the bases for these objections, ... [is] baseless and should be overruled" (Dkt. #103 at 5).

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo determination of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b)(2)-(3). "Parties filing objections must specifically identify those findings [to which they object]. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles v. Wainwright,* 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc); *Chase Bank USA, N.A. v. McLain*, No. 1:12-CV-353, 2013 WL 713404, at *1 (E.D. Tex. Feb. 26, 2012).  In Plaintiff's seventh objection, he does not identify any specific issue of law or fact among those set forth in the Magistrate Judge's report and recommendation with which he disagrees, nor does he address the findings and recommendations of the Magistrate Judge (*see* Dkt. #101 at 4). Plaintiff does nothing more than cite six specific sentences in the Magistrate Judge's report and recommendation to which he has a "concern or objection." *Id.*  Therefore, Plaintiff's seventh objection fails to invoke his right to a de novo review of the report and recommendation as to these six sentences.

Nonetheless, the Court has undertaken a de novo review of these six sentences – and the report and recommendation as a whole – and the Court concludes that the Magistrate Judge's findings and conclusions are correct. *See Douglass,* 79 F.3d at 1429 (noting that a district court may alternatively find the magistrate judge's findings and conclusions were correct even though

a party did not properly object to the report and recommendation).  The Magistrate Judge found that Plaintiff's claims against the TWU Defendants should be dismissed in their entirety for both lack of subject matter jurisdiction and failure to state a claim (Dkt. #100).  The Court agrees. The Court does not have subject matter jurisdiction over Plaintiff's claims against the TWU Defendants, and Plaintiff's Fifth Amended Complaint is insufficient to state a claim. Accordingly, the Court finds Plaintiff's seventh objection is overruled.

## SUMMARY

Plaintiff's objections to the Magistrate Judge's report and recommendation are overruled. However, as previously noted, even if the Court sustained all of these objections, the findings and conclusions of the Magistrate Judge regarding the TWU Defendants' entitlement to Eleventh Amendment immunity (for all but the alleged Fourteenth Amendment violations), the Individual Defendants' entitlement to qualified immunity, and Plaintiff's claims against the Individual Defendants that either do not exist and/or are inapplicable to this litigation, would remain unaffected, because Plaintiff's objections do not touch on, or in any way impact, these findings; Plaintiff has failed to specifically object to these findings.  Moreover, having now exhaustively considered Plaintiff's objections, any remaining claims – including specifically against the TWU Defendants in their official capacities for alleged violations of the Fourteenth Amendment – are also dismissed as either barred by Eleventh Amendment immunity (if Plaintiff's relief is construed as monetary relief) or barred for lack of standing (if Plaintiff's relief is construed as injunctive relief).

## PLAINTIFF'S MOTION TO APPOINT COUNSEL

In addition to his timely filed objections, Plaintiff has again requested that the Court appoint him counsel (Dkts. #101 at 1; #102).  Plaintiff has previously requested court-appointed

counsel on two occasions (*see* Dkts. #3; #86 at 5), and on both such occasions the Court has denied his request (*see* Dkts. 7; 100 at 10, n.7). The Magistrate Judge, in denying Plaintiff's second request for court-appointed counsel, explained that a litigant has no general right to a court-appointed attorney in a civil case unless there are "exceptional circumstances" (Dkt. #100 at 10, n.7 (citing *FTC v. Assail, Inc*., 410 F.3d 256, 267 (5th Cir. 2005); *Ulmer v. Chancellor*, 691 F.2d 209, 212-13 (5th Cir. 1982))). The Magistrate Judge found that Plaintiff's case does not present such exceptional circumstances. *Id*. Plaintiff has presented no changed or exceptional circumstances since his last request. Accordingly, Plaintiff's [Third] Motion to Appoint Counsel (Dkt. #102) is denied.

## CONCLUSION

Having received the report of the United States Magistrate Judge (Dkt. #100), having considered each of Plaintiff's timely filed objections (Dkt. #101), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's report (Dkt. #100) as the findings and conclusions of the Court.

It is, therefore, **ORDERED** that Defendants Texas Woman's University, Ann Stuart, Robert Neely, Ann Staton, Jennifer Martin, Daniel Miller, Barbara Presnall, AnaLouise Keating, Linda Rubin, Stephen Souris, Claire Sahlin, Christian Hart, and Danielle Phillips' First Amended Motion to Dismiss (Dkt. #73) is **DENIED** as moot.

It is further **ORDERED** that the TWU Defendants' Second Amended Motion to Dismiss (Dkt. #78) and Supplemental Motion to Dismiss and Brief in Support (Dkt. #96) are **GRANTED**, and Plaintiff's claims against the TWU Defendants are **DISMISSED** with

prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

It is further **ORDERED** that Plaintiff's Motion for Appointment of Counsel (Dkt. #102) is **DENIED**.

All relief not previously granted is **DENIED**.

The Clerk is directed to **CLOSE** this civil action.

**IT IS SO ORDERED.**

**SIGNED this 24th day of March, 2016.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE